# EXHIBIT B

## DOCUMENTS FILED IN STATE COURT ACTION

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| BENT OAK TOWNHOUSES, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 5:16-CV-1310 |
| | § | |
| PELEUS INSURANCE COMPANY, | § | |
| | § | |
| Defendant. | § | |
| | § | |

## INDEX OF DOCUMENTS FILED IN STATE COURT ACTION

1.   State Court Docket Sheet/Case Detail Sheet

2.   Plaintiff Bent Oak Townhouses, Inc.'s Original Petition
     Filed:          December 19, 2016

3.   Plaintiff Bent Oak Townhouses, Inc.'s First Amended Petition
     Filed:          December 21, 2016

4.   Civil Process Request
     Filed:          December 21, 2016

5.   Citation
     Issued:          December 21, 2016
     Served:          December 27, 2016

6.   Defendant Peleus Insurance Company's Answer to Plaintiff's First Amended Petition
     Filed:          December 28, 2016

# EXHIBIT B-1

## STATE COURT DOCKET SHEET/CASE DETAIL



GERARD C. RICKHOFF          DONNA KAY McKINNEY

COUNTY CLERK & DISTRICT CLERK
COURT RECORDS SEARCH

# Case #2016CI21574

**Name**:

**Date Filed** : 12/19/2016

**Case Status** : PENDING

**Litigant Type** : DEFENDANT

**Court** : 225

**Docket Type** : CONSUMER/DTPA

**Business Name** : PELEUS INSURANCE COMPANY

**Style** : BENT OAK TOWNHOUSES INC

**Style (2)** : vs PELEUS INSURANCE COMPANY

# Case History

*Currently viewing 1 through 11 of 11 records*

| Sequence | Date Filed | Description |
|---|---|---|
| P00010 | 12/28/2016 | EMAILED COPY OF:<br>ENTIRE FILE |
| P00009 | 12/28/2016 | FAX TRANSMITTAL/RECORDING DEPT FROM<br>ZELLE LLP |
| P00008 | 12/28/2016 | AMENDED ANSWER OF<br>PELEUS INSURANCE COMPANY TO PLAINTIFF'S<br>FIRST AMENDED PETITION |
| S00001 | 12/21/2016 | CITATION CERTIFIED MAIL<br>PELEUS INSURANCE COMPANY<br>ISSUED: 12/21/2016 |
| P00007 | 12/21/2016 | FAX TRANSMITTAL/RECORDING DEPT FROM<br>ZELLE LLP |
| P00006 | 12/21/2016 | FAX TRANSMITTAL/RECORDING DEPT FROM<br>ZELLE LLP |
| P00005 | 12/21/2016 | REQUEST FOR SERVICE AND PROCESS |
| P00004 | 12/21/2016 | FIRST AMENDED PETITION |
| P00003 | 12/19/2016 | SERVICE ASSIGNED TO CLERK 2 |
| P00002 | 12/19/2016 | JURY FEE PAID |
| P00001 | 12/19/2016 | PET FOR HAIL DAMAGE COMMERCIAL<br>WITH JURY DEMAND |

# EXHIBIT B-2

## PLAINTIFF BENT OAK TOWNHOUSES, INC.'S ORIGINAL PETITION

FILED
12/19/2016 11:35:56 AM
Donna Kay McKinney
Bexar County District Clerk
Accepted By: Brenda Carrillo

Case 5:16-cv-01310-FB    Document 1-4    Filed 12/29/16    Page 7 of 72    CITPPS/SAC2 W/JD

## 2016CI21574

CAUSE NO. _____

| | | |
|---|---|---|
| BENT OAK TOWNHOUSES, INC. | § | IN THE DISTRICT COURT |
| | § | |
| *Plaintiff* | § | |
| | § | |
| V. | § | BEXAR COUNTY, TEXAS |
| | § | |
| | § | 225TH |
| PELEUS INSURANCE COMPANY | § | |
| | § | _____ JUDICIAL DISTRICT |
| *Defendant* | § | |
| | § | |

## PLAINTIFF BENT OAK TOWNHOUSES, INC.'S ORIGINAL PETITION

**TO THE HONORABLE JUDGE OF SAID COURT:**

**COMES NOW,** Bent Oak Townhouses, Inc., (hereinafter referred to as "Plaintiff"), complaining of Peleus Insurance Company, (hereinafter referred to as "Defendant") and for cause of action would respectfully show unto this Honorable Court and Jury as follows:

### DISCOVERY CONTROL PLAN

1. Plaintiff intends for discovery to be conducted under Level 2 of Texas Rule of Civil Procedure 190.3 and affirmatively pleads that this suit is not governed by the expedited-actions process of Texas Rule of Civil Procedure 169 because Plaintiff seeks monetary relief of over $100,000.00.

### PARTIES

2. Plaintiff is an individual residing in Bexar County, Texas.

3. Peleus Insurance Company is a foreign insurance company engaging in the business of insurance in the State of Texas. Defendant may be served with process by serving its registered agent of service, the

Commissioner of Insurance, located at the following address: Texas Department of Insurance, 333

Guadalupe, Austin, Texas 78701.

## JURISDICTION

4.   The Court has jurisdiction over this cause of action because the amount in controversy is within the

jurisdictional limits of the Court.

5.   The Court has jurisdiction over Defendant Peleus Insurance Company because Defendant is a foreign

insurance company that engages in the business of insurance in the State of Texas and Plaintiff's causes

of action arise out of Defendant's business activities in the State of Texas.   Specifically, Peleus

Insurance Company sought out and marketed for insurance in Texas and has "purposefully availed"

itself of the privilege of conducting activities in Texas.   *Kelly v. General Interior Constr., Inc.*, 301

S.W.3d 653, 660-61 (Tex. 2010).

## VENUE

6.   Venue is proper in Bexar County, Texas, because the Property is situated in Bexar County, Texas. TEX.

CIV. PRAC. & REM. CODE §15.032.

## FACTS

7.   Plaintiff purchased a policy from Defendant, (hereinafter referred to as "the Policy"), which was in

effect at the time of loss.

8.   The Policy was purchased to insure Plaintiff's property, (hereinafter referred to as "the Property"),

which is located at 11303 Vance Jackson Road, San Antonio, Texas 78230.

9.   Defendant and/or its agent sold the Policy insuring the Property to Plaintiff.

10.  Plaintiff is a "consumer" as defined under the Texas Deceptive Trade Practices Act ("DTPA") because it

is a business who sought or acquired by purchase or lease, goods or services, for commercial, personal

or household use.

11.  On or about April 12, 2016, Plaintiff experienced a severe weather related event which caused

substantial damage to the Property and surrounding homes and businesses in the area. The Property's

damage constitutes a covered loss under the Policy issued by Defendant. On or around April 13, 2016,

Plaintiff reported the claim to Defendant's representatives. On April 15, 2016, via email, Strata Claims

Management ("Strata"), a third-party administrator for Defendant, acknowledged the reported claim and

explained that Engle Martin & Associates ("EMA") will assist in the investigation and evaluation of the

claim.

12.  On May 17, 2016, via email, Strata informed Plaintiff that Defendant accepted coverage for the claim,

pending a final agreement on the scope and pricing.  Defendant intentionally and wrongfully delayed the

acceptance and payment of this claim. On May 17, 2016, Defendant's third-party administrator

represented to Plaintiff that Defendant would cover the claim and wrongfully conditioned the acceptance

of the covered loss on a final agreement of the pricing.

13.  Additionally in the May 17, 2016 email, knowing Plaintiff was in desperate need of repairs, the third-

party administrator, Strata, tried to unfairly and improperly settle the claim upon signing a release one

month before producing the estimate.  Strata's bad faith conduct in attempting to settle a claim without

producing an estimate and without Plaintiff having knowledge of Defendant's estimate detailing the

repair costs is a wrongful and improper attempt to mislead Plaintiff and prevent Plaintiff from receiving Policy benefits that are rightfully owed.

14. Further, in the May 17, 2016 email, Defendant determined an advance payment in the amount of $75,000.00 would be issued under a separate cover, pending a signed and notarized Proof of Loss. However, Defendant did not explain the "separate cover." Such an attempt to mislead and confuse Plaintiff as to the nature of source of an advance payment is both improper and wrongful and constitutes violations of the Texas Insurance Code and Texas Deceptive Trade Practices Act.

15. Plaintiff should have received Defendant's estimate on or before May 21, 2016. However, it was not until June 23, 2016, via email, that EMA produced its estimate of repairs to Plaintiff because it was waiting on authorization from Defendant. Defendant's improper delay of authorization and acceptance of coverage without producing the estimate constitutes bad faith misconduct. Peleus intentionally and wrongfully failed to promptly provide the estimate of $224,203.88 to Plaintiff. Instead, Defendant created a further delay of this claim in order to prevent Plaintiff from receiving payments it is entitled to.

16. Defendant was informed on August 23, 2016 that Plaintiff had retained McClenny Moseley & Associates, PLLC. Plaintiff hired a professional estimate writer to do an inspection from September 19-22, 2016. The professional estimate writer requested documents from Defendant, including invoices for hail damage repairs that have been completed. To date, Defendant has intentionally failed to provide invoices of completed work, and therefore, the professional estimate writer's estimate has not included allowances for such repairs. In the Narrative Report he states, "there is no 'gray area' in terms of

damages. Either it is damaged or not. If the life expectancy has been compromised, we allowed for replacement. If it was acceptably repairable, we allowed for a repair."

17. The professional estimate writer observed all dwellings received functional hail damage to the roof tiles/shingles, soft and hard metals, flashings and gutters. All the roofs had 30-year laminate roofs that need to be replaced along with the step flashing, which will require detaching and resetting the siding. Resetting the siding will require scaffolding for worker safety as required by the Occupational Safety and Health Administration ("OSHA"). OSHA requires that when working on buildings with "unprotected sides and edges" that "each employee on a walking/working surface (horizontal and vertical surface) with an unprotected side or edge which is 6 feet (1.8m) or more above a lower level shall be protected from falling by the use of guardrail systems, safety net systems, or personal fall arrest systems." Occupational Safety and Health Act of 1970 § 1926.501(b)(1). Peleus' estimate did not allow for OSHA requirements.

18.  The professional estimate writer also observed that the garages had a mixture of metal, tar and gravel, and TPO roofs. However, the garages that had metal roofs all exhibited functional hail damage due to hail hits of substantial size. The garages with TPO showed the ISO board was severely compromised due to decreases in areas of hail impact. Such severe damage to the ISO board warrants a roof replacement, which is a standard carrier practice. Additionally, the garages with tar and gravel roofs showed the tar was thinner due to hail impact. An insurance company must replace the roof because existing damage will allow for the tar's expansion and compression, causing interior damage to the property.

19. The professional estimate writer also noted that the patio area experienced siding and trim damage to the exterior door, fences, and patio covers. The 3 mailbox structures exhibited functional damage to the 30-year laminate roofs. The trash dumpsters that were enclosed by 6 foot fences had hail hits. Additionally, the pool enclosure incurred the same damage as the dwelling roofs, namely an excess of 15 hail hits per test square.

20. In summation, Defendant and its representatives intentionally and wrongfully ignored objective evidence in order to prevent Plaintiff from receiving policy benefits for the covered loss.

21. Moreover, the estimate provided from Plaintiff's professional estimate writer was in the total amount of $959,955.30, which includes $945,288.39 for the dwelling and $14,666.91 for other structures. The disparity between Peleus' estimate of $224,203.88 and Bent Oak's professional estimate writer's estimate, which is $734,751.42, is severe and alarming. Peleus' estimate was written so carelessly that the number of structures was not accurately accounted for. Peleus' estimate did not account for overhead and profit although it estimated for five different trades such as general demolition; heat, vent & air conditioning; painting; roofing; and window reglazing & repair. Peleus and its representatives conspired to knowingly, wrongfully, and incorrectly inspect and adjust the damages in order to underpay Plaintiff for a covered loss under the Policy.

22. Further, EMA hired Rimkus Consulting Group ("Rimkus"), a biased, bought and paid for engineer whose book of business is almost entirely, if not entirely from insurance carriers, to inspect only the garage roofs on June 15, 2016. EMA's direction intentionally and improperly narrowed the scope of Rimkus' investigation. Bent Oak has requested for the engineering report from both the engineer and

Peleus several times via phone and email to no avail. Plaintiff did not receive the engineering report until October 13, 2016, after Plaintiff had retained the services of an attorney. This improper and intentional delay in receiving the engineer's report constitutes bad faith.

23. Rimkus' engineering report wrongfully and incorrectly concludes that of all 57 garages, 44 garages had gravel roofs, 3 garages had metal roofs, and there was no damage to the 10 TPO single-ply membrane roof coverings. First, Rimkus' engineering report incorrectly states there are 3 garages with metal roofs. As evidenced by Plaintiff's professional estimate writer's estimate, there are 4 garages with metal roofs. Moreover, the professional estimate writer observed functional hail damage to all the metal garage roofs. Rimkus' engineering report does not include an inspection or discussion of any damage to the garages with metal roofs.   Defendant improperly attempted to use Rimkus to generate a biased engineering report to prevent Plaintiff from receiving the policy benefits it is rightfully owed.

24. Second, as evidenced by Plaintiff's professional estimate writer's estimate, there are 8 single-ply membrane roof coverings. Rimkus' engineering report incorrectly states Garage B-4 and Garage M-1 have single-ply membrane roof coverings, when both Garage B-4 and Garage M-1 have gravel roofs. Every paragraph for the 10 garage roofs inspected states that spatter marks were observed, but failed to mention the severely compromised ISO board underlying the TPO roof membrane, which was noted in Bent Oak's professional estimate writer's estimate.   Additionally, it is an industry standard to replace the roof to remediate the ISO board damage.

25. On October 17, 2016, Plaintiff submitted its sworn and notarized Proof of Loss form to Defendant, who did not issue payment until on or around November 9, 2016. Defendant should have issued payment on

or before November 8, 2016. Defendant's wrongful and improper delay of the payment regarding the undisputed actual cost value is an attempt to intentionally prevent Plaintiff from receiving Policy benefits it is owed.

26.  Defendant's estimate did not allow for adequate funds to cover the cost of repairs and therefore grossly undervalued all of the damages sustained to the Property. As a result of Defendant's conduct, Plaintiff's claim was intentionally and knowingly underpaid.

27.  Defendant's third-party claims administrator acted as an authorized agent of Defendant. Defendant's third-party claims administrator acted within the course and scope of their authority as authorized by Defendant. Plaintiff relied on Defendant and Defendant's third-party claims administrator to properly adjust the claim regarding the Property and to be issued payment to fix such damage, which did not happen and has not been rectified to date.

28.  Defendant failed to perform its contractual duties to adequately compensate Plaintiff under the terms of the Policy.  Specifically, Defendant refused to pay the full proceeds owed under the Policy. Due demand was made by Plaintiff for proceeds to be in an amount sufficient to cover the damaged Property.

29.  Defendant and/or Defendant's assigned agent sold the Policy to Plaintiff, making various statements and representations to Plaintiff that the Property would be covered. Relying on the promises and representations made by Defendant and/or Defendant's assigned agent, Plaintiff filed a claim under the Policy with the belief that the Property would be covered after a severe weather event such as the one that damaged the Property.

30. All conditions precedent to recovery under the Policy had, and have, been carried out and accomplished by Plaintiff.

31. As a result of Defendant's wrongful acts and omissions, Plaintiff was forced to retain the professional services of McClenny Moseley & Associates, PLLC, who is representing Plaintiff with respect to these causes of action.

## AGENCY

32. Plaintiff hereby incorporates by reference all facts and circumstances set forth under the foregoing paragraphs.

33. All acts by Defendant were undertaken and completed by its officers, agents, servants, employees, and/or representatives. All such acts were either done with the full authorization or ratification of Defendant and/or were completed in its normal and routine course and scope of employment.

34. Defendant and Defendant's third-party claims administrator's conduct constitutes multiple violations of the Texas Insurance Code, Unfair Settlement Practices. TEX. INS. CODE § 541.060(a). All violations under this subsection are made actionable by TEX. INS. CODE § 541.151.

35. Defendant is liable for the unfair and deceptive acts of its third-party claims administrator because he/she meets the definition of a "person" as defined by the Texas Insurance Code. The term "person" is defined as "any individual, corporation, association, partnership, reciprocal or inter insurance exchange, Lloyds plan, fraternal benefit society, or other legal entity engaged in the business of insurance, including an agent, broker, *adjuster* or life and health insurance counselor." TEX. INS. CODE §541.002(2) (emphasis added); *see also Liberty Mutual Ins. Co. v. Garrison Contractors, Inc.* 966

S.W.2d 482, 484 (Tex. 1998) (holding an insurance company employee to be a person for the purpose of bringing a cause of action against them under the Texas Insurance Code and subjecting them to individual liability).

## NEGLIGENCE

36. Plaintiff hereby incorporates by reference all facts and circumstances set forth under the foregoing paragraphs.

37. Plaintiff entrusted Defendant to properly adjust Plaintiff's insurance claim for the Property damage. Defendant did not properly adjust the claim and misinformed Plaintiff of the severity of the Property damage. Defendant had and owed a duty to ensure that the Property damage was properly adjusted. Nevertheless, Defendant failed to ensure that Plaintiff's damage was properly adjusted. This failure is a clear breach of Defendant's duty, and as a result, Plaintiff suffered significant injuries.

38. Defendant and its third-party claims administrator had and owed a legal duty to Plaintiff to properly adjust all losses associated with the Property.  Defendant, individually and through its third-party claims administrator, breached this duty in a number of ways, including, but not limited to, the following:

   A.   Defendant, individually and through its third-party claims administrator, was to exercise due care in adjusting and paying policy proceeds regarding the Property;

   B.   Defendant, individually and through its third-party claims administrator, had a duty to competently and completely handle and pay all covered losses associated with the Property;

C.  Defendant, individually and through its third-party claims administrator, failed to properly complete all adjusting activities associated with Plaintiff's damages; and,

D.  Defendant's acts, omissions, and/or breaches, individually and through its third-party claims administrator, did great damage to Plaintiff, and were a proximate cause of Plaintiff's damages.

## BREACH OF CONTRACT

39. Plaintiff hereby incorporates by reference all facts and circumstances set forth under the foregoing paragraphs.

40. Defendant's conduct constitutes a breach of the insurance contract made between Defendant and Plaintiff. According to the Policy, which Plaintiff purchased, Defendant had the absolute duty to investigate Plaintiff's damages, and pay Plaintiff policy benefits for the claims made due to the extensive storm-related damages.

41. As a result of the storm-related event, Plaintiff suffered extreme weather related damages. Despite objective evidence of weather related damages provided by Plaintiff, Defendant Peleus Insurance Company breached its contractual obligations under the Policy by failing to pay Plaintiff cost related benefits to properly repair the Property, as well as for related losses associated with the subject loss event.  As a result of this breach, Plaintiff has suffered additional actual and consequential damages.

## VIOLATIONS OF THE TEXAS DECEPTIVE TRADE PRACTICES ACT

42. Plaintiff hereby incorporates by reference all facts and circumstances set forth under the foregoing paragraphs.

43. Defendant and/or its third-party claims administrator engaged in false, misleading, or deceptive acts or practices that constitute violations of the Texas Deceptive Trade Practices Act ("DTPA"), which is codified in the Texas Business and Commerce Code ("TEX. BUS. & COM. CODE"), including but not limited to:

    A.   Representing that an agreement confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law (TEX. BUS. & COM. CODE § 17.46(b)(12));

    B.   Failing to disclose information concerning goods or services which were known at the time of the transaction, and the failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had such information been disclosed (§ 17.46(b)(24));

    C.   Using or employing an act or practice in violation of the Texas Insurance Code (§ 17.50(a)(4));

    D.   Unreasonably delaying the investigation, adjustment, settlement offer and prompt resolution of Plaintiff's claim (TEX. INS. CODE § 541.060(a)(2)-(5));

    E.   Failure to properly investigate Plaintiff's claim (TEX. INS. CODE § 541.060(7)); and/or

    F.   Hiring and relying upon a biased adjuster, in this case Defendant's third-party claims administrator, to obtain a favorable, results-oriented report, and to assist Defendant in

severely underpaying and/or denying Plaintiff's damage claim (TEX. BUS. & COM.

CODE § 17.46(31)).

44. As described in this Original Petition, Defendant represented to Plaintiff that its Policy and Peleus

Insurance Company's adjusting and investigative services had characteristics or benefits that it actually

did not have, which gives Plaintiff the right to recover proceeds. § 17.46(b)(5).

45. As described in this Original Petition, Defendant represented to Plaintiff that its Policy and Peleus

Insurance Company's adjusting and investigative services were of a particular standard, quality, or grade

when they were of another, which stands in violation of § 17.46 (b)(7).

46. By Defendant representing that it would pay the entire amount needed by Plaintiff to repair the damages

caused by the weather related event and then not doing so, Defendant has violated §§ 17.46 (b)(5), (7),

(12).

47. Defendant has breached an express warranty that the damage caused by the storm-related event would

be covered under Policy.  This breach entitles Plaintiff to recover under §§ 17.46 (b) (12), (20); 17.50

(a)(2).

48. Defendant's actions, as described herein, are unconscionable in that Defendant took advantage of

Plaintiff's lack of knowledge, ability, and experience to a grossly unfair degree.  Therefore, Defendant's

unconscionable conduct gives Plaintiff the right to relief under § 17.50(a)(3).

49. Defendant's conduct, acts, omissions, and failures, as described in this Original Petition, are unfair

practices in the business of insurance and are in violation of § 17.50 (a)(4).

50. Plaintiff is a consumer, as defined under the DTPA, and relied upon these false, misleading, and/or deceptive acts and/or practices, made by Defendant Peleus Insurance Company, to its detriment.  As a direct and proximate result of Defendant's collective acts and conduct, Plaintiff has been damaged in an amount in excess of the minimum jurisdictional limits of this Court, for which Plaintiff now sues.  All of the aforementioned acts, omissions, and failures of Defendant are a producing cause of Plaintiff's damages which are described in this Original Petition.

51. Because Defendant's collective actions and conduct were committed knowingly and intentionally, in addition to all damages described herein, Plaintiff is entitled to recover mental anguish damages and additional penalty damages, in an amount not to exceed three times such actual damages. § 17.50(b)(1).

52. As a result of Defendant's unconscionable, misleading, and deceptive actions and conduct, Plaintiff has been forced to retain the legal services of the undersigned attorneys to protect and pursue these claims on its behalf.  Accordingly, Plaintiff also seeks to recover its costs and reasonable and necessary attorneys' fees as permitted under § 17.50(d), as well as any other such damages to which Plaintiff may show itself to be justly entitled by law and in equity.

## VIOLATIONS OF THE TEXAS INSURANCE CODE

53. Plaintiff hereby incorporates by reference all facts and circumstances set forth within the foregoing paragraphs.

54. Defendant and/or its third-party claims administrator's actions constitute violations of the Texas Insurance Code ("TEX. INS. CODE"), Chapters 541 and 542, including but not limited to:

A.   Misrepresenting to Plaintiff pertinent facts or policy provisions relating to the coverage at issue (TEX. INS. CODE § 541.060(a)(1));

B.   Failing to attempt, in good faith, to effectuate a prompt, fair and equitable settlement of a claim with respect to which the insurer's liability has become reasonably clear (§ 541.060(a)(2)(A));

C.   Failing to promptly provide to a policyholder a reasonable explanation of the basis in the policy, in relation to the facts or applicable law, for the insurer's denial of a claim or for the offer of a compromise settlement of a claim (§ 541.060(a)(3));

D.   Refusing, failing, or unreasonably delaying a settlement offer on the basis that other coverage is available (§ 541.060 (a)(5));

E.   Refusing, to pay a claim without conducting a reasonable investigation with respect to the claim (§ 541.060(a)(7));

F.   Forcing Plaintiffs to file suit to recover amounts due under the policy by refusing to pay all benefits due (§ 542.003(b)(5));

G.   Engaging in false, misleading, and deceptive acts or practices under the DTPA (§ 541.151(2));

H.   Failing to pay a valid claim after receiving all reasonably requested and required items from the insured (§ 542.058(a));

I.   Failing to pay a claim not later than the 5th business day after the date of notice of acceptance was made (§ 542.057); and/or

      J.   Failing to pay a valid claim after receiving all reasonably requested and required items from the insured (§ 542.058(a)).

55. By its acts, omissions, failures and conduct, Defendant has engaged in unfair and deceptive acts and practices in the business of insurance. Plaintiff, the insured and beneficiary, has a valid claim as a result of its detrimental reliance upon Defendant's unfair or deceptive acts or practices. § 541.151(2).

56. Defendant's aforementioned conduct compelled Plaintiff to initiate this lawsuit to recover amounts due under the Policy, by offering substantially less than the amount ultimately recovered. Defendant refused to offer more than the grossly undervalued estimates prepared by Defendant and/or Defendant's third-party claims administrator, despite knowing the actual damages were much greater than what was offered. Defendant's continued refusal to offer compelled Plaintiff to file suit. § 542.003(5).

57. Since a violation of the Texas Insurance Code is a direct violation of the DTPA, and because Defendant's actions and conduct were committed knowingly and intentionally, Plaintiff is entitled to recover, in addition to all damages described herein, mental anguish damages and additional penalty damages, in an amount not to exceed three times the amount of actual damages, for Defendant having knowingly, intentionally and/or negligently committed said actions and conduct. § 541.152.

58. As a result of Defendant's unfair and deceptive actions and conduct, Plaintiff has been forced to retain the legal services of the undersigned attorneys to protect and pursue these claims on their behalf. Accordingly, Plaintiff also seeks to recover their costs and reasonable and necessary attorneys' fees as permitted under TEX. BUS. & COM. CODE § 17.50(d) or TEX. INS. CODE § 541.152 and any other such damages to which Plaintiff may show itself justly entitled by law and in equity.

## BREACH OF THE COMMON LAW DUTY
## OF GOOD FAITH & FAIR DEALING

59. Plaintiff hereby incorporates by reference all facts and circumstances in the foregoing paragraphs.

60. From and after the time Plaintiff's claim was presented to Defendant, the liability of Defendant to pay the full claim in accordance with the terms of the Policy was more than reasonably clear. However, Defendant has refused to pay Plaintiff in full, despite there being no basis whatsoever on which a reasonable insurance company would have relied on to deny full payment. Defendant's conduct constitutes a breach of the common law duty of good faith and fair dealing. *See Viles v. Security National Ins. Co.,* 788 S.W.2d 556, 567 (Tex. 1990) (holding that an insurer has a duty to its insureds to "investigate claims thoroughly and in good faith" and an insurer can only deny a claim after a thorough investigation shows that there is a reasonable basis to deny that claim).

61. For the breach of the common law duty of good faith and fair dealing, Plaintiff is entitled to compensatory damages, including all forms of loss resulting from Defendant's breach of the duty, such additional costs, economic hardship, losses due to nonpayment of the amount owed to Plaintiff, and/or exemplary damages for emotional distress.

## KNOWLEDGE

62. Each of the acts described above, together and singularly, were done "knowingly" and "intentionally," as the terms are used in the Texas Insurance Code, and were a producing cause of Plaintiff's damages described herein.

## DAMAGES

63. Plaintiff will show that all of the aforementioned acts, taken together or singularly, constitute the producing causes of the damages sustained by Plaintiff.

64. For breach of contract, Plaintiff is entitled to regain the benefit of Plaintiff's bargain, which is the amount of Plaintiff's claim, together with attorneys' fees.

65. For noncompliance with the Texas Insurance Code, Unfair Settlement Practices, Plaintiff is entitled to actual damages, which include the loss of the benefit that should have been paid pursuant to the Policy, court costs and attorneys' fees. For knowing conduct of the acts complained of, Plaintiff asks for three times Plaintiff's actual damages. TEX. INS. CODE § 541.152.

66. For noncompliance with Texas Insurance Code, Prompt Payment of Claims, Plaintiff is entitled to the amount of Plaintiff's claim, as well as eighteen (18) percent interest per annum of the amount of Plaintiff's claim as damages, together with attorneys' fees. § 542.060.

67. For breach of the common law duty of good faith and fair dealing, Plaintiff is entitled to compensatory damages, including all forms of loss resulting from the insurer's breach of duty, such as additional costs, economic hardship, losses due to nonpayment of the amount the insurer owed, and/or exemplary damages for emotional distress.

68. For the prosecution and collection of this claim, Plaintiff has been compelled to engage the services of the law firm whose name is subscribed to this pleading. Therefore, Plaintiff is entitled to recover a sum for the reasonable and necessary services of Plaintiff's attorneys in the preparation and trial of this action, including any appeals to the Court of Appeals and/or the Supreme Court of Texas.

69. Defendant's acts have been the producing and/or proximate cause of damage to Plaintiff, and Plaintiff

seeks an amount in excess of the minimum jurisdictional limits of this Court.

70. More specifically, Plaintiff seeks monetary relief, including damages of any kind, penalties, costs,

expenses, pre-judgment interest, and attorneys' fees, in excess of $1,000,000.00.

## ADDITIONAL DAMAGES & PENALTIES

71. Defendant's conduct was committed knowingly and intentionally.  Accordingly, Defendant is liable for

additional damages under the DTPA, TEX. BUS. & COM. CODE § 17.50(b)(1), as well as all operative

provisions of the Texas Insurance Code.  Plaintiff is clearly entitled to the 18% damages allowed under

TEX. INS. CODE § 542.060.

## ATTORNEY'S FEES

72. In addition, Plaintiff is entitled to all reasonable and necessary attorneys' fees pursuant to the Texas

Insurance Code, DTPA, and TEX. CIV. PRAC. & REM. CODE §§ 38.001-.005.

## COMPEL MEDIATION

73. Pursuant to TEX. INS. CODE § 541.161 and TEX. BUS. & COM. CODE § 17.5051, Plaintiff requests

that Defendant be made to mediate no later than the 30th day of the signed order, following the 90th day

after the date for which this pleading for relief is served upon Defendant.

## JURY DEMAND

74. Plaintiff demands a jury trial, consisting of citizens residing in Bexar County, Texas, and tenders the

appropriate fee with this Original Petition.

## DISCOVERY

75. Texas Rule of Civil Procedure 47 has been met in this petition. As such, Plaintiff requests that

Defendant respond to the Requests for Disclosure, Requests for Production and Interrogatories

contained herein:

## l. REQUESTS FOR DISCLOSURE

1.  Pursuant to the Texas Rules of Civil Procedure, Plaintiff request that Defendant Peleus Insurance

    Company, disclose all information and/or material as required by Rule 194.2, paragraphs (a)

    through (l), and to do so within 50 days of this request.

## II. REQUESTS FOR PRODUCTION

1.  Please produce Peleus Insurance Company's complete claim files from the home, regional and local

    offices, as well as third party adjusters/adjusting firms regarding the subject claim, including copies

    of the file jackets, "field" files and notes, and drafts of documents contained in the file for the

    premises relating to or arising out of Plaintiff's underlying claim.

2.  Please produce the underwriting files referring or relating in any way to the policy at issue in this

    action, including the file folders in which the underwriting documents are kept and drafts of all

    documents in the file.

3.  Please produce a certified copy of the insurance policy pertaining to the claim made subject of this

    lawsuit, including all underwriting files and insurance applications sent on behalf of Plaintiff in its

    attempt to secure insurance on the Property, which is the subject of this suit.

4.   Please produce the electronic diary, including the electronic and paper notes made by Peleus Insurance Company's claims personnel, contractors, and third party adjusters/adjusting firms relating to the Plaintiff's claim.

5.   Please produce all emails and other forms of communication by and between all parties in this matter relating to the underlying event, claim or the Property, which is the subject of this suit.

6.   Please produce the adjusting reports, estimates and appraisals prepared concerning Plaintiff's underlying claim.

7.   Please produce the field notes, measurements and file maintained by the adjuster(s) and engineers who physically inspected the Property, which is the subject of this suit.

8.   Please produce the emails, instant messages and internal correspondence pertaining to Plaintiff's underlying claim.

9.   Please produce the videotapes, photographs and recordings of Plaintiff or Plaintiff's home, regardless of whether Peleus Insurance Company intends to offer these items into evidence at trial.

10.  Please produce all communications, correspondence, documents and emails between any and all third-party claims administrators and/or agents and the Plaintiff, not limited to physical or audio recordings of all conversations between Plaintiff and any and all third-party claims administrators and/or agents.

11.  Please produce all audio recordings or transcripts of conversations, calls, text, email or any other data sent to and from Plaintiff by any and all third-party claims administrators and/or agents after their letter of representation sent by counsel.

12. Please provide copies of all marketing material sent on behalf of Peleus Insurance Company and/or its agents after the date of loss of the Property, which is the subject of this suit.

13. Please provide all correspondence between Peleus Insurance Company and its third-party claims administrator, and all correspondence between Peleus Insurance Company and its assigned agents, after the date of loss of the Property, which is the subject of this suit.

## III. INTERROGATORIES

1. Please identify any person Peleus Insurance Company expects to call to testify at the time of trial.

2. Please identify the persons involved in the investigation and handling of Plaintiff's claim for insurance benefits arising from damage relating to the underlying event, claim or the Property, which is the subject of this suit, and include a brief description of the involvement of each person identified, their employer, and the date(s) of such involvement.

3. If Peleus Insurance Company or Peleus Insurance Company's representatives performed any investigative steps in addition to what is reflected in the claims file, please generally describe those investigative steps conducted by Peleus Insurance Company or any of Peleus Insurance Company's representatives with respect to the facts surrounding the circumstances of the subject loss. Identify the persons involved in each step.

4. Please identify by date, author, and result the estimates, appraisals, engineering, mold and other reports generated as a result of Peleus Insurance Company's investigation.

5. Please state the following concerning notice of claim and timing of payment:

    a.     The date and manner in which Peleus Insurance Company received notice of the claim;

---

b.      The date and manner in which Peleus Insurance Company acknowledged receipt of the claim;

c.      The date and manner in which Peleus Insurance Company commenced investigation of the claim;

d.      The date and manner in which Peleus Insurance Company requested from the claimant all items, statements, and forms that Peleus Insurance Company reasonably believed, at the time, would be required from the claimant pursuant to the investigation; and

e.      The date and manner in which Peleus Insurance Company notified the claimant in writing of the acceptance or rejection of the claim.

6.   Please identify by date, amount and reason, the insurance proceeds payments made by Defendant, or on Defendant's behalf, to the Plaintiff.

7.   Has Plaintiff's claim for insurance benefits been rejected or denied? If so, state the reasons for rejecting/denying the claim.

8.   When was the date Peleus Insurance Company anticipated litigation?

9.   Have any documents (including those maintained electronically) relating to the investigation or handling of Plaintiff's claim for insurance benefits been destroyed or disposed of? If so, please identify what, when and why the document was destroyed, and describe Peleus Insurance Company's document retention policy.

10.  Does Peleus Insurance Company contend that the insured's premises were damaged by storm-related events and/or any excluded peril?  If so, state the general factual basis for this contention.

11. Does Peleus Insurance Company contend that any act or omission by the Plaintiff voided, nullified, waived or breached the insurance policy in any way? If so, state the general factual basis for this contention.

12. Does Peleus Insurance Company contend that the Plaintiff failed to satisfy any condition precedent or covenant of the Policy in any way?  If so, state the general factual basis for this contention.

13. How is the performance of the adjuster(s) involved in handling Plaintiff's claim evaluated?  State what performance measures are used and describe Peleus Insurance Company's bonus or incentive plan for adjusters.

## <u>CONCLUSION</u>

76. Plaintiff prays that judgment be entered against Defendant Peleus Insurance Company and that Plaintiff be awarded all of its actual damages, consequential damages, prejudgment interest, additional statutory damages, post judgment interest, reasonable and necessary attorneys' fees, court costs and for all such other relief, general or specific, in law or in equity, whether pled or un-pled within this Original Petition.

## <u>PRAYER</u>

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays it be awarded all such relief to which it is due as a result of the acts of Defendant Peleus Insurance Company, and for all such other relief to which Plaintiff may be justly and rightfully entitled. In addition, Plaintiff requests the award of treble damages under the Texas Deceptive Trade Practices Act and Texas Insurance Code, attorneys' fees for the trial and any appeal of this lawsuit, for all costs of Court on their behalf expended, for pre-judgment and post-

judgment interest as allowed by law, and for any other and further relief, either at law or in equity, to which

Plaintiff may show the itself to be justly entitled.

RESPECTFULLY SUBMITTED,

*/s/ J. Zachary Moseley*
McCLENNY MOSELEY & ASSOCIATES, PLLC
James M. McClenny
State Bar No. 24091857
J. Zachary Moseley
State Bar No. 24092863
Kelley A. Seid
State Bar No. 24102480
411 N. Sam Houston Parkway E., Suite 200
Houston, Texas 77060
Principal Office No. 713-334-6121
Facsimile: 713-322-5953
James@mma-pllc.com
Zach@mma-pllc.com
Kelley@mma-pllc.com
ATTORNEYS FOR PLAINTIFF

## CIVIL PROCESS REQUEST

> **FOR EACH PARTY SERVED YOU MUST FURNISH ONE (1) COPY OF THE PLEADING**
> **FOR WRITS FURNISH TWO (2) COPIES OF THE PLEADING PER PARTY TO BE SERVED**

**CASE NUMBER:** _____   **CURRENT COURT:** _____

**TYPE OF INSTRUMENT TO BE SERVED** (See Reverse For Types): Plaintiff's Original Petition

**FILE DATE OF MOTION:** 12/19/2016
　　　　　　　　　　　　　　　　Month/　　Day/　　Year

**SERVICE TO BE ISSUED ON (Please List Exactly As The Name Appears In The Pleading To Be Served):**

**1.** NAME:  Peleus Insurance Company

　　ADDRESS:  333 Guadalupe, Austin, Texas 78701

　　AGENT, (*if applicable*):  The Commissioner of Insurance

**TYPE OF SERVICE/PROCESS TO BE ISSUED** (*see reverse for specific type*): Citation

　　**SERVICE BY** (*check one*):
　　☐ **ATTORNEY PICK-UP**　　　　　☐ **CONSTABLE**
　　☐ **CIVIL PROCESS SERVER -** Authorized Person to Pick-up: _____　Phone: _____
　　☐ **MAIL**　　　　　　　　☒ **CERTIFIED MAIL**
　　☐ **PUBLICATION:**
　　　　Type of Publication:　☐ **COURTHOUSE DOOR,  or**
　　　　　　　　　　　　　☐ **NEWSPAPER OF YOUR CHOICE:** _____
　　☐ **OTHER**, *explain* _____

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
\*\*\*\*

**2.** NAME: _____

　　ADDRESS: _____

　　AGENT, (*if applicable*): _____

**TYPE OF SERVICE/PROCESS TO BE ISSUED** (*see reverse for specific type*): _____

　　**SERVICE BY** (*check one*):
　　☐ **ATTORNEY PICK-UP**　　　　　☐ **CONSTABLE**
　　☐ **CIVIL PROCESS SERVER -** Authorized Person to Pick-up: _____　Phone: _____
　　☐ **MAIL**　　　　　　　　☐ **CERTIFIED MAIL**
　　☐ **PUBLICATION:**
　　　　Type of Publication:　☐ **COURTHOUSE DOOR,  or**
　　　　　　　　　　　　　☐ **NEWSPAPER OF YOUR CHOICE:** _____
　　☐ **OTHER**, *explain* _____

**ATTORNEY (OR ATTORNEY'S AGENT) REQUESTING SERVICE:**

NAME:  J. Zachary Moseley _____ TEXAS BAR NO./ID NO.  24092863

MAILING ADDRESS:  411 N. Sam Houston Parkway E, Suite 200, Houston, Texas 77060

PHONE NUMBER:  713    334-6121 　　　FAX NUMBER:  713    322-5986
　　　　　　　area code　phone number　　　　　　　area code　fax number

EMAIL ADDRESS:  Zach@mma-pllc.com

CIVIC108 Revised 9/3/99

SERVICE REQUESTS WHICH CANNOT BE PROCESSED BY THIS OFFICE WILL BE HELD FOR 30 DAYS PRIOR TO CANCELLATION.  FEES WILL BE REFUNDED ONLY UPON REQUEST, OR AT THE DISPOSITION OF THE CASE.  SERVICE REQUESTS MAY BE REINSTATED UPON APPROPRIATE ACTION BY THE PARTIES.

INSTRUMENTS TO BE SERVED:
(Fill In Instrument Sequence Number, i.e. 1st, 2nd, etc.)

ORIGINAL PETITION
_____    AMENDED PETITION
_____    SUPPLEMENTAL PETITION


COUNTERCLAIM
_____    AMENDED COUNTERCLAIM
_____    SUPPLEMENTAL COUNTERCLAIM

CROSS-ACTION:
_____    AMENDED CROSS-ACTION
_____    SUPPLEMENTAL CROSS-ACTION

THIRD-PARTY PETITION:
_____    AMENDED THIRD-PARTY PETITION
_____    SUPPLEMENTAL THIRD-PARTY PETITION

INTERVENTION:
_____    AMENDED INTERVENTION
_____    SUPPLEMENTAL INTERVENTION

INTERPLEADER
_____    AMENDED INTERPLEADER
_____    SUPPLEMENTAL INTERPLEADER


INJUNCTION

MOTION TO MODIFY

SHOW CAUSE ORDER

TEMPORARY RESTRAINING ORDER


BILL OF DISCOVERY:
    ORDER TO:  _____
                            (specify)

    MOTION TO:  _____
                            (specify)

PROCESS TYPES:

NON WRIT:
CITATION
ALIAS CITATION
PLURIES CITATION
SECRETARY OF STATE CITATION
COMMISSIONER OF INSURANCE
HIGHWAY COMMISSIONER
CITATION BY PUBLICATION
NOTICE
SHORT FORM NOTICE

PRECEPT (SHOW CAUSE)
RULE 106 SERVICE

SUBPOENA

WRITS:
ATTACHMENT (PROPERTY)
ATACHMENT (WITNESS)
ATTACHMENT (PERSON)

CERTIORARI

EXECUTION
EXECUTION AND ORDER OF SALE

GARNISHMENT BEFORE JUDGMENT
GARNISHMENT AFTER JUDGMENT

HABEAS CORPUS
INJUNCTION
TEMPORARY RESTRAINING ORDER

PROTECTIVE ORDER (FAMILY CODE)
PROTECTIVE ORDER (CIVIL CODE)

POSSESSION (PERSON)
POSSESSION (PROPERTY)

SCIRE FACIAS
SEQUESTRATION
SUPERSEDEAS

CIVC108 Revised 9/7/99

# CIVIL CASE INFORMATION SHEET

| CAUSE NUMBER *(FOR CLERK USE ONLY):* _____ | COURT *(FOR CLERK USE ONLY):* _____ |

STYLED **Bent Oak Townhouses, Inc. v. Peleus Insurance Company**

(e.g., John Smith v. All American Insurance Co; In re Mary Ann Jones; In the Matter of the Estate of George Jackson)

A civil case information sheet must be completed and submitted when an original petition or application is filed to initiate a new civil, family law, probate, or mental health case or when a post-judgment petition for modification or motion for enforcement is filed in a family law case. The information should be the best available at the time of filing.

## 1. Contact information for person completing case information sheet:

| Name: | Email: |
|---|---|
| J. Zachary Moseley | Zach@mma-pllc.com |

| Address: | Telephone: |
|---|---|
| 411 N. Sam Houston Pkwy E. | 713-344-6121 |

| City/State/Zip: | Fax: |
|---|---|
| Suite 200, Houston, TX 77060 | 713-322-5986 |

| Signature: | State Bar No: |
|---|---|
| *J. Zachary Moseley* | 24092863 |

### Names of parties in case:

Plaintiff(s)/Petitioner(s):

**Bent Oak Townhouses, Inc.**

Defendant(s)/Respondent(s):

**Peleus Insurance Company**

[Attach additional page as necessary to list all parties]

### Person or entity completing sheet is:

[x] Attorney for Plaintiff/Petitioner
[ ] Pro Se Plaintiff/Petitioner
[ ] Title IV-D Agency
[ ] Other: _____

Additional Parties in Child Support Case:

Custodial Parent: _____

Non-Custodial Parent: _____

Presumed Father: _____

## 2. Indicate case type, or identify the most important issue in the case (select only 1):

### Civil

**Contract**

*Debt/Contract*
[x] Consumer/DTPA
[ ] Debt/Contract
[ ] Fraud/Misrepresentation
[ ] Other Debt/Contract:

*Foreclosure*
[ ] Home Equity—Expedited
[ ] Other Foreclosure
[ ] Franchise
[ ] Insurance
[ ] Landlord/Tenant
[ ] Non-Competition
[ ] Partnership
[ ] Other Contract:

**Injury or Damage**

[ ] Assault/Battery
[ ] Construction
[ ] Defamation
*Malpractice*
[ ] Accounting
[ ] Legal
[ ] Medical
[ ] Other Professional Liability:
[ ] Motor Vehicle Accident
[ ] Premises
*Product Liability*
[ ] Asbestos/Silica
[ ] Other Product Liability List Product:
[ ] Other Injury or Damage:

**Real Property**

[ ] Eminent Domain/ Condemnation
[ ] Partition
[ ] Quiet Title
[ ] Trespass to Try Title
[ ] Other Property:

**Related to Criminal Matters**

[ ] Expunction
[ ] Judgment Nisi
[ ] Non-Disclosure
[ ] Seizure/Forfeiture
[ ] Writ of Habeas Corpus— Pre-indictment
[ ] Other:

### Family Law

**Marriage Relationship**

[ ] Annulment
[ ] Declare Marriage Void
*Divorce*
[ ] With Children
[ ] No Children

**Other Family Law**

[ ] Enforce Foreign Judgment
[ ] Habeas Corpus
[ ] Name Change
[ ] Protective Order
[ ] Removal of Disabilities of Minority
[ ] Other:

**Post-judgment Actions (non-Title IV-D)**

[ ] Enforcement
[ ] Modification—Custody
[ ] Modification—Other

**Title IV-D**

[ ] Enforcement/Modification
[ ] Paternity
[ ] Reciprocals (UIFSA)
[ ] Support Order

**Parent-Child Relationship**

[ ] Adoption/Adoption with Termination
[ ] Child Protection
[ ] Child Support
[ ] Custody or Visitation
[ ] Gestational Parenting
[ ] Grandparent Access
[ ] Parentage/Paternity
[ ] Termination of Parental Rights
[ ] Other Parent-Child:

### Employment

[ ] Discrimination
[ ] Retaliation
[ ] Termination
[ ] Workers' Compensation
[ ] Other Employment:

### Other Civil

[ ] Administrative Appeal
[ ] Antitrust/Unfair Competition
[ ] Code Violations
[ ] Foreign Judgment
[ ] Intellectual Property

[ ] Lawyer Discipline
[ ] Perpetuate Testimony
[ ] Securities/Stock
[ ] Tortious Interference
[ ] Other:

### Tax

[ ] Tax Appraisal
[ ] Tax Delinquency
[ ] Other Tax

### Probate & Mental Health

*Probate/Wills/Intestate Administration*
[ ] Dependent Administration
[ ] Independent Administration
[ ] Other Estate Proceedings

[ ] Guardianship—Adult
[ ] Guardianship—Minor
[ ] Mental Health
[ ] Other: _____

## 3. Indicate procedure or remedy, if applicable (may select more than 1):

[ ] Appeal from Municipal or Justice Court
[ ] Arbitration-related
[ ] Attachment
[ ] Bill of Review
[ ] Certiorari
[ ] Class Action

[ ] Declaratory Judgment
[ ] Garnishment
[ ] Interpleader
[ ] License
[ ] Mandamus
[ ] Post-judgment

[ ] Prejudgment Remedy
[ ] Protective Order
[ ] Receiver
[ ] Sequestration
[ ] Temporary Restraining Order/Injunction
[ ] Turnover

## 4. Indicate damages sought (do not select if it is a family law case):

[ ] Less than $100,000, including damages of any kind, penalties, costs, expenses, pre-judgment interest, and attorney fees
[ ] Less than $100,000 and non-monetary relief
[ ] Over $100, 000 but not more than $200,000
[ ] Over $200,000 but not more than $1,000,000
[x] Over $1,000,000

Rev 2/13

# EXHIBIT B-3

## PLAINTIFF BENT OAK TOWNHOUSES, INC.'S FIRST AMENDED PETITION

FILED
12/21/2016 10:07:18 AM
Donna Kay McKinney
Bexar County District Clerk
Accepted By: Edgar Garcia

Case 5:16-cv-01310-FB    Document 1-4    Filed 12/29/16    Page 36 of 72

2016CI21574

CAUSE NO. _____

| | | |
|---|---|---|
| **BENT OAK TOWNHOUSES, INC.** | § | **IN THE DISTRICT COURT** |
| | § | |
| *Plaintiff* | § | |
| | § | |
| V. | § | |
| | § | **BEXAR COUNTY, TEXAS** |
| | § | |
| | § | |
| **PELEUS INSURANCE COMPANY** | § | 225 |
| | § | _____ **JUDICIAL DISTRICT** |
| *Defendant* | § | |
| | § | |

## PLAINTIFF BENT OAK TOWNHOUSES, INC.'S FIRST AMENDED PETITION

**TO THE HONORABLE JUDGE OF SAID COURT:**

**COMES NOW,** Bent Oak Townhouses, Inc., (hereinafter referred to as "Plaintiff"), complaining of Peleus Insurance Company, (hereinafter referred to as "Defendant") and for cause of action would respectfully show unto this Honorable Court and Jury as follows:

### DISCOVERY CONTROL PLAN

1. Plaintiff intends for discovery to be conducted under Level 2 of Texas Rule of Civil Procedure 190.3 and affirmatively pleads that this suit is not governed by the expedited-actions process of Texas Rule of Civil Procedure 169 because Plaintiff seeks monetary relief of over $100,000.00.

### PARTIES

2. Plaintiff is an individual residing in Bexar County, Texas.

3. Peleus Insurance Company is a foreign insurance company engaging in the business of insurance in the State of Texas. Defendant may be served with process by serving its attorney of record, Mr. James Holbrook with Zelle LLP at the following address: 901 Main Street, Suite 4000, Dallas, Texas 75202.

## JURISDICTION

4.   The Court has jurisdiction over this cause of action because the amount in controversy is within the

jurisdictional limits of the Court.

5.   The Court has jurisdiction over Defendant Peleus Insurance Company because Defendant is a foreign

insurance company that engages in the business of insurance in the State of Texas and Plaintiff's causes

of action arise out of Defendant's business activities in the State of Texas.   Specifically, Peleus

Insurance Company sought out and marketed for insurance in Texas and has "purposefully availed"

itself of the privilege of conducting activities in Texas.   *Kelly v. General Interior Constr., Inc.*, 301

S.W.3d 653, 660-61 (Tex. 2010).

## VENUE

6.   Venue is proper in Bexar County, Texas, because the Property is situated in Bexar County, Texas. TEX.

CIV. PRAC. & REM. CODE §15.032.

## FACTS

7.   Plaintiff purchased a policy from Defendant, (hereinafter referred to as "the Policy"), which was in

effect at the time of loss.

8.   The Policy was purchased to insure Plaintiff's property, (hereinafter referred to as "the Property"),

which is located at 11303 Vance Jackson Road, San Antonio, Texas 78230.

9.   Defendant and/or its agent sold the Policy insuring the Property to Plaintiff.

10.  Plaintiff is a "consumer" as defined under the Texas Deceptive Trade Practices Act ("DTPA") because it

is a business who sought or acquired by purchase or lease, goods or services, for commercial, personal

or household use.

11. On or about April 12, 2016, Plaintiff experienced a severe weather related event which caused substantial damage to the Property and surrounding homes and businesses in the area. The Property's damage constitutes a covered loss under the Policy issued by Defendant. On or around April 13, 2016, Plaintiff reported the claim to Defendant's representatives. On April 15, 2016, via email, Strata Claims Management ("Strata"), a third-party administrator for Defendant, acknowledged the reported claim and explained that Engle Martin & Associates ("EMA") will assist in the investigation and evaluation of the claim.

12. On May 17, 2016, via email, Strata informed Plaintiff that Defendant accepted coverage for the claim, pending a final agreement on the scope and pricing.  Defendant intentionally and wrongfully delayed the acceptance and payment of this claim. On May 17, 2016, Defendant's third-party administrator represented to Plaintiff that Defendant would cover the claim and wrongfully conditioned the acceptance of the covered loss on a final agreement of the pricing.

13. Additionally in the May 17, 2016 email, knowing Plaintiff was in desperate need of repairs, the third-party administrator, Strata, tried to unfairly and improperly settle the claim upon signing a release one month before producing the estimate.  Strata's bad faith conduct in attempting to settle a claim without producing an estimate and without Plaintiff having knowledge of Defendant's estimate detailing the repair costs is a wrongful and improper attempt to mislead Plaintiff and prevent Plaintiff from receiving Policy benefits that are rightfully owed.

14. Further, in the May 17, 2016 email, Defendant determined an advance payment in the amount of $75,000.00 would be issued under a separate cover, pending a signed and notarized Proof of Loss.

---

However, Defendant did not explain the "separate cover." Such an attempt to mislead and confuse Plaintiff as to the nature of source of an advance payment is both improper and wrongful and constitutes violations of the Texas Insurance Code and Texas Deceptive Trade Practices Act.

15. Plaintiff should have received Defendant's estimate on or before May 21, 2016. However, it was not until June 23, 2016, via email, that EMA produced its estimate of repairs to Plaintiff because it was waiting on authorization from Defendant. Defendant's improper delay of authorization and acceptance of coverage without producing the estimate constitutes bad faith misconduct. Peleus intentionally and wrongfully failed to promptly provide the estimate of $224,203.88 to Plaintiff. Instead, Defendant created a further delay of this claim in order to prevent Plaintiff from receiving payments it is entitled to.

16. Defendant was informed on August 23, 2016 that Plaintiff had retained McClenny Moseley & Associates, PLLC. Plaintiff hired a professional estimate writer to do an inspection from September 19-22, 2016. The professional estimate writer requested documents from Defendant, including invoices for hail damage repairs that have been completed. To date, Defendant has intentionally failed to provide invoices of completed work, and therefore, the professional estimate writer's estimate has not included allowances for such repairs. In the Narrative Report he states, "there is no 'gray area' in terms of damages. Either it is damaged or not. If the life expectancy has been compromised, we allowed for replacement. If it was acceptably repairable, we allowed for a repair."

17. The professional estimate writer observed all dwellings received functional hail damage to the roof tiles/shingles, soft and hard metals, flashings and gutters. All the roofs had 30-year laminate roofs that need to be replaced along with the step flashing, which will require detaching and resetting the siding.

Resetting the siding will require scaffolding for worker safety as required by the Occupational Safety and Health Administration ("OSHA"). OSHA requires that when working on buildings with "unprotected sides and edges" that "each employee on a walking/working surface (horizontal and vertical surface) with an unprotected side or edge which is 6 feet (1.8m) or more above a lower level shall be protected from falling by the use of guardrail systems, safety net systems, or personal fall arrest systems." Occupational Safety and Health Act of 1970 § 1926.501(b)(1). Peleus' estimate did not allow for OSHA requirements.

18.  The professional estimate writer also observed that the garages had a mixture of metal, tar and gravel, and TPO roofs. However, the garages that had metal roofs all exhibited functional hail damage due to hail hits of substantial size. The garages with TPO showed the ISO board was severely compromised due to decreases in areas of hail impact. Such severe damage to the ISO board warrants a roof replacement, which is a standard carrier practice. Additionally, the garages with tar and gravel roofs showed the tar was thinner due to hail impact. An insurance company must replace the roof because existing damage will allow for the tar's expansion and compression, causing interior damage to the property.

19.  The professional estimate writer also noted that the patio area experienced siding and trim damage to the exterior door, fences, and patio covers. The 3 mailbox structures exhibited functional damage to the 30-year laminate roofs. The trash dumpsters that were enclosed by 6 foot fences had hail hits. Additionally, the pool enclosure incurred the same damage as the dwelling roofs, namely an excess of 15 hail hits per test square.

20. In summation, Defendant and its representatives intentionally and wrongfully ignored objective evidence in order to prevent Plaintiff from receiving policy benefits for the covered loss.

21. Moreover, the estimate provided from Plaintiff's professional estimate writer was in the total amount of $959,955.30, which includes $945,288.39 for the dwelling and $14,666.91 for other structures. The disparity between Peleus' estimate of $224,203.88 and Bent Oak's professional estimate writer's estimate, which is $734,751.42, is severe and alarming. Peleus' estimate was written so carelessly that the number of structures was not accurately accounted for. Peleus' estimate did not account for overhead and profit although it estimated for five different trades such as general demolition; heat, vent & air conditioning; painting; roofing; and window reglazing & repair. Peleus and its representatives conspired to knowingly, wrongfully, and incorrectly inspect and adjust the damages in order to underpay Plaintiff for a covered loss under the Policy.

22. Further, EMA hired Rimkus Consulting Group ("Rimkus"), a biased, bought and paid for engineer whose book of business is almost entirely, if not entirely from insurance carriers, to inspect only the garage roofs on June 15, 2016. EMA's direction intentionally and improperly narrowed the scope of Rimkus' investigation. Bent Oak has requested for the engineering report from both the engineer and Peleus several times via phone and email to no avail. Plaintiff did not receive the engineering report until October 13, 2016, after Plaintiff had retained the services of an attorney. This improper and intentional delay in receiving the engineer's report constitutes bad faith.

23. Rimkus' engineering report wrongfully and incorrectly concludes that of all 57 garages, 44 garages had gravel roofs, 3 garages had metal roofs, and there was no damage to the 10 TPO single-ply membrane

roof coverings. First, Rimkus' engineering report incorrectly states there are 3 garages with metal roofs. As evidenced by Plaintiff's professional estimate writer's estimate, there are 4 garages with metal roofs. Moreover, the professional estimate writer observed functional hail damage to all the metal garage roofs. Rimkus' engineering report does not include an inspection or discussion of any damage to the garages with metal roofs. Defendant improperly attempted to use Rimkus to generate a biased engineering report to prevent Plaintiff from receiving the policy benefits it is rightfully owed.

24. Second, as evidenced by Plaintiff's professional estimate writer's estimate, there are 8 single-ply membrane roof coverings. Rimkus' engineering report incorrectly states Garage B-4 and Garage M-1 have single-ply membrane roof coverings, when both Garage B-4 and Garage M-1 have gravel roofs. Every paragraph for the 10 garage roofs inspected states that spatter marks were observed, but failed to mention the severely compromised ISO board underlying the TPO roof membrane, which was noted in Bent Oak's professional estimate writer's estimate. Additionally, it is an industry standard to replace the roof to remediate the ISO board damage.

25. On October 17, 2016, Plaintiff submitted its sworn and notarized Proof of Loss form to Defendant, who did not issue payment until on or around November 9, 2016. Defendant should have issued payment on or before November 8, 2016. Defendant's wrongful and improper delay of the payment regarding the undisputed actual cost value is an attempt to intentionally prevent Plaintiff from receiving Policy benefits it is owed.

26. Defendant's estimate did not allow for adequate funds to cover the cost of repairs and therefore grossly undervalued all of the damages sustained to the Property. As a result of Defendant's conduct, Plaintiff's claim was intentionally and knowingly underpaid.

27. Defendant's third-party claims administrator acted as an authorized agent of Defendant. Defendant's third-party claims administrator acted within the course and scope of their authority as authorized by Defendant. Plaintiff relied on Defendant and Defendant's third-party claims administrator to properly adjust the claim regarding the Property and to be issued payment to fix such damage, which did not happen and has not been rectified to date.

28. Defendant failed to perform its contractual duties to adequately compensate Plaintiff under the terms of the Policy.  Specifically, Defendant refused to pay the full proceeds owed under the Policy. Due demand was made by Plaintiff for proceeds to be in an amount sufficient to cover the damaged Property.

29. Defendant and/or Defendant's assigned agent sold the Policy to Plaintiff, making various statements and representations to Plaintiff that the Property would be covered. Relying on the promises and representations made by Defendant and/or Defendant's assigned agent, Plaintiff filed a claim under the Policy with the belief that the Property would be covered after a severe weather event such as the one that damaged the Property.

30. All conditions precedent to recovery under the Policy had, and have, been carried out and accomplished by Plaintiff.

31. As a result of Defendant's wrongful acts and omissions, Plaintiff was forced to retain the professional services of McClenny Moseley & Associates, PLLC, who is representing Plaintiff with respect to these causes of action.

## AGENCY

32. Plaintiff hereby incorporates by reference all facts and circumstances set forth under the foregoing paragraphs.

33. All acts by Defendant were undertaken and completed by its officers, agents, servants, employees, and/or representatives. All such acts were either done with the full authorization or ratification of Defendant and/or were completed in its normal and routine course and scope of employment.

34. Defendant and Defendant's third-party claims administrator's conduct constitutes multiple violations of the Texas Insurance Code, Unfair Settlement Practices. TEX. INS. CODE § 541.060(a). All violations under this subsection are made actionable by TEX. INS. CODE § 541.151.

35. Defendant is liable for the unfair and deceptive acts of its third-party claims administrator because he/she meets the definition of a "person" as defined by the Texas Insurance Code. The term "person" is defined as "any individual, corporation, association, partnership, reciprocal or inter insurance exchange, Lloyds plan, fraternal benefit society, or other legal entity engaged in the business of insurance, including an agent, broker, *adjuster* or life and health insurance counselor." TEX. INS. CODE §541.002(2) (emphasis added); *see also Liberty Mutual Ins. Co. v. Garrison Contractors, Inc.* 966 S.W.2d 482, 484 (Tex. 1998) (holding an insurance company employee to be a person for the purpose of

bringing a cause of action against them under the Texas Insurance Code and subjecting them to individual liability).

## NEGLIGENCE

36. Plaintiff hereby incorporates by reference all facts and circumstances set forth under the foregoing paragraphs.

37. Plaintiff entrusted Defendant to properly adjust Plaintiff's insurance claim for the Property damage. Defendant did not properly adjust the claim and misinformed Plaintiff of the severity of the Property damage. Defendant had and owed a duty to ensure that the Property damage was properly adjusted. Nevertheless, Defendant failed to ensure that Plaintiff's damage was properly adjusted. This failure is a clear breach of Defendant's duty, and as a result, Plaintiff suffered significant injuries.

38. Defendant and its third-party claims administrator had and owed a legal duty to Plaintiff to properly adjust all losses associated with the Property.  Defendant, individually and through its third-party claims administrator, breached this duty in a number of ways, including, but not limited to, the following:

    A.  Defendant, individually and through its third-party claims administrator, was to exercise due care in adjusting and paying policy proceeds regarding the Property;

    B.  Defendant, individually and through its third-party claims administrator, had a duty to competently and completely handle and pay all covered losses associated with the Property;

    C.  Defendant, individually and through its third-party claims administrator, failed to properly complete all adjusting activities associated with Plaintiff's damages; and,

D.   Defendant's acts, omissions, and/or breaches, individually and through its third-party

claims administrator, did great damage to Plaintiff, and were a proximate cause of

Plaintiff's damages.

## BREACH OF CONTRACT

39. Plaintiff hereby incorporates by reference all facts and circumstances set forth under the foregoing

paragraphs.

40. Defendant's conduct constitutes a breach of the insurance contract made between Defendant and

Plaintiff. According to the Policy, which Plaintiff purchased, Defendant had the absolute duty to

investigate Plaintiff's damages, and pay Plaintiff policy benefits for the claims made due to the

extensive storm-related damages.

41. As a result of the storm-related event, Plaintiff suffered extreme weather related damages. Despite

objective evidence of weather related damages provided by Plaintiff, Defendant Peleus Insurance

Company breached its contractual obligations under the Policy by failing to pay Plaintiff cost related

benefits to properly repair the Property, as well as for related losses associated with the subject loss

event.  As a result of this breach, Plaintiff has suffered additional actual and consequential damages.

## VIOLATIONS OF THE TEXAS DECEPTIVE TRADE PRACTICES ACT

42. Plaintiff hereby incorporates by reference all facts and circumstances set forth under the foregoing

paragraphs.

43. Defendant and/or its third-party claims administrator engaged in false, misleading, or deceptive acts or

practices that constitute violations of the Texas Deceptive Trade Practices Act ("DTPA"), which is

codified in the Texas Business and Commerce Code ("TEX. BUS. & COM. CODE"), including but not limited to:

    A.   Representing that an agreement confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law (TEX. BUS. & COM. CODE § 17.46(b)(12));

    B.   Failing to disclose information concerning goods or services which were known at the time of the transaction, and the failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had such information been disclosed (§ 17.46(b)(24));

    C.   Using or employing an act or practice in violation of the Texas Insurance Code (§ 17.50(a)(4));

    D.   Unreasonably delaying the investigation, adjustment, settlement offer and prompt resolution of Plaintiff's claim (TEX. INS. CODE § 541.060(a)(2)-(5));

    E.   Failure to properly investigate Plaintiff's claim (TEX. INS. CODE § 541.060(7)); and/or

    F.   Hiring and relying upon a biased adjuster, in this case Defendant's third-party claims administrator, to obtain a favorable, results-oriented report, and to assist Defendant in severely underpaying and/or denying Plaintiff's damage claim (TEX. BUS. & COM. CODE § 17.46(31)).

44. As described in this First Amended, Defendant represented to Plaintiff that its Policy and Peleus Insurance Company's adjusting and investigative services had characteristics or benefits that it actually did not have, which gives Plaintiff the right to recover proceeds. § 17.46(b)(5).

45. As described in this First Amended, Defendant represented to Plaintiff that its Policy and Peleus Insurance Company's adjusting and investigative services were of a particular standard, quality, or grade when they were of another, which stands in violation of § 17.46 (b)(7).

46. By Defendant representing that it would pay the entire amount needed by Plaintiff to repair the damages caused by the weather related event and then not doing so, Defendant has violated §§ 17.46 (b)(5), (7), (12).

47. Defendant has breached an express warranty that the damage caused by the storm-related event would be covered under Policy.  This breach entitles Plaintiff to recover under §§ 17.46 (b) (12), (20); 17.50 (a)(2).

48. Defendant's actions, as described herein, are unconscionable in that Defendant took advantage of Plaintiff's lack of knowledge, ability, and experience to a grossly unfair degree.  Therefore, Defendant's unconscionable conduct gives Plaintiff the right to relief under § 17.50(a)(3).

49. Defendant's conduct, acts, omissions, and failures, as described in this First Amended, are unfair practices in the business of insurance and are in violation of § 17.50 (a)(4).

50. Plaintiff is a consumer, as defined under the DTPA, and relied upon these false, misleading, and/or deceptive acts and/or practices, made by Defendant Peleus Insurance Company, to its detriment.  As a direct and proximate result of Defendant's collective acts and conduct, Plaintiff has been damaged in an

amount in excess of the minimum jurisdictional limits of this Court, for which Plaintiff now sues. All of the aforementioned acts, omissions, and failures of Defendant are a producing cause of Plaintiff's damages which are described in this First Amended.

51. Because Defendant's collective actions and conduct were committed knowingly and intentionally, in addition to all damages described herein, Plaintiff is entitled to recover mental anguish damages and additional penalty damages, in an amount not to exceed three times such actual damages. § 17.50(b)(1).

52. As a result of Defendant's unconscionable, misleading, and deceptive actions and conduct, Plaintiff has been forced to retain the legal services of the undersigned attorneys to protect and pursue these claims on its behalf. Accordingly, Plaintiff also seeks to recover its costs and reasonable and necessary attorneys' fees as permitted under § 17.50(d), as well as any other such damages to which Plaintiff may show itself to be justly entitled by law and in equity.

## VIOLATIONS OF THE TEXAS INSURANCE CODE

53. Plaintiff hereby incorporates by reference all facts and circumstances set forth within the foregoing paragraphs.

54. Defendant and/or its third-party claims administrator's actions constitute violations of the Texas Insurance Code ("TEX. INS. CODE"), Chapters 541 and 542, including but not limited to:

    A.  Misrepresenting to Plaintiff pertinent facts or policy provisions relating to the coverage at issue (TEX. INS. CODE § 541.060(a)(1));

B.   Failing to attempt, in good faith, to effectuate a prompt, fair and equitable settlement of a claim with respect to which the insurer's liability has become reasonably clear (§ 541.060(a)(2)(A));

C.   Failing to promptly provide to a policyholder a reasonable explanation of the basis in the policy, in relation to the facts or applicable law, for the insurer's denial of a claim or for the offer of a compromise settlement of a claim (§ 541.060(a)(3));

D.   Refusing, failing, or unreasonably delaying a settlement offer on the basis that other coverage is available (§ 541.060 (a)(5));

E.   Refusing, to pay a claim without conducting a reasonable investigation with respect to the claim (§ 541.060(a)(7));

F.   Forcing Plaintiffs to file suit to recover amounts due under the policy by refusing to pay all benefits due (§ 542.003(b)(5));

G.   Engaging in false, misleading, and deceptive acts or practices under the DTPA (§ 541.151(2));

H.   Failing to pay a valid claim after receiving all reasonably requested and required items from the insured (§ 542.058(a));

I.   Failing to pay a claim not later than the 5th business day after the date of notice of acceptance was made (§ 542.057); and/or

J.   Failing to pay a valid claim after receiving all reasonably requested and required items from the insured (§ 542.058(a)).

55. By its acts, omissions, failures and conduct, Defendant has engaged in unfair and deceptive acts and

practices in the business of insurance. Plaintiff, the insured and beneficiary, has a valid claim as a result

of its detrimental reliance upon Defendant's unfair or deceptive acts or practices. § 541.151(2).

56. Defendant's aforementioned conduct compelled Plaintiff to initiate this lawsuit to recover amounts due

under the Policy, by offering substantially less than the amount ultimately recovered. Defendant refused

to offer more than the grossly undervalued estimates prepared by Defendant and/or Defendant's third-

party claims administrator, despite knowing the actual damages were much greater than what was

offered. Defendant's continued refusal to offer compelled Plaintiff to file suit. § 542.003(5).

57. Since a violation of the Texas Insurance Code is a direct violation of the DTPA, and because

Defendant's actions and conduct were committed knowingly and intentionally, Plaintiff is entitled to

recover, in addition to all damages described herein, mental anguish damages and additional penalty

damages, in an amount not to exceed three times the amount of actual damages, for Defendant having

knowingly, intentionally and/or negligently committed said actions and conduct. § 541.152.

58. As a result of Defendant's unfair and deceptive actions and conduct, Plaintiff has been forced to retain

the legal services of the undersigned attorneys to protect and pursue these claims on their behalf.

Accordingly, Plaintiff also seeks to recover their costs and reasonable and necessary attorneys' fees as

permitted under TEX. BUS. & COM. CODE § 17.50(d) or TEX. INS. CODE § 541.152 and any other

such damages to which Plaintiff may show itself justly entitled by law and in equity.

### BREACH OF THE COMMON LAW DUTY
### OF GOOD FAITH & FAIR DEALING

59. Plaintiff hereby incorporates by reference all facts and circumstances in the foregoing paragraphs.

60. From and after the time Plaintiff's claim was presented to Defendant, the liability of Defendant to pay the full claim in accordance with the terms of the Policy was more than reasonably clear. However, Defendant has refused to pay Plaintiff in full, despite there being no basis whatsoever on which a reasonable insurance company would have relied on to deny full payment. Defendant's conduct constitutes a breach of the common law duty of good faith and fair dealing. *See Viles v. Security National Ins. Co.,* 788 S.W.2d 556, 567 (Tex. 1990) (holding that an insurer has a duty to its insureds to "investigate claims thoroughly and in good faith" and an insurer can only deny a claim after a thorough investigation shows that there is a reasonable basis to deny that claim).

61. For the breach of the common law duty of good faith and fair dealing, Plaintiff is entitled to compensatory damages, including all forms of loss resulting from Defendant's breach of the duty, such additional costs, economic hardship, losses due to nonpayment of the amount owed to Plaintiff, and/or exemplary damages for emotional distress.

## KNOWLEDGE

62. Each of the acts described above, together and singularly, were done "knowingly" and "intentionally," as the terms are used in the Texas Insurance Code, and were a producing cause of Plaintiff's damages described herein.

## DAMAGES

63. Plaintiff will show that all of the aforementioned acts, taken together or singularly, constitute the producing causes of the damages sustained by Plaintiff.

64. For breach of contract, Plaintiff is entitled to regain the benefit of Plaintiff's bargain, which is the amount of Plaintiff's claim, together with attorneys' fees.

65. For noncompliance with the Texas Insurance Code, Unfair Settlement Practices, Plaintiff is entitled to actual damages, which include the loss of the benefit that should have been paid pursuant to the Policy, court costs and attorneys' fees. For knowing conduct of the acts complained of, Plaintiff asks for three times Plaintiff's actual damages. TEX. INS. CODE § 541.152.

66. For noncompliance with Texas Insurance Code, Prompt Payment of Claims, Plaintiff is entitled to the amount of Plaintiff's claim, as well as eighteen (18) percent interest per annum of the amount of Plaintiff's claim as damages, together with attorneys' fees. § 542.060.

67. For breach of the common law duty of good faith and fair dealing, Plaintiff is entitled to compensatory damages, including all forms of loss resulting from the insurer's breach of duty, such as additional costs, economic hardship, losses due to nonpayment of the amount the insurer owed, and/or exemplary damages for emotional distress.

68. For the prosecution and collection of this claim, Plaintiff has been compelled to engage the services of the law firm whose name is subscribed to this pleading. Therefore, Plaintiff is entitled to recover a sum for the reasonable and necessary services of Plaintiff's attorneys in the preparation and trial of this action, including any appeals to the Court of Appeals and/or the Supreme Court of Texas.

69. Defendant's acts have been the producing and/or proximate cause of damage to Plaintiff, and Plaintiff seeks an amount in excess of the minimum jurisdictional limits of this Court.

70. More specifically, Plaintiff seeks monetary relief, including damages of any kind, penalties, costs, expenses, pre-judgment interest, and attorneys' fees, in excess of $1,000,000.00.

## ADDITIONAL DAMAGES & PENALTIES

71. Defendant's conduct was committed knowingly and intentionally.  Accordingly, Defendant is liable for additional damages under the DTPA, TEX. BUS. & COM. CODE § 17.50(b)(1), as well as all operative provisions of the Texas Insurance Code.  Plaintiff is clearly entitled to the 18% damages allowed under TEX. INS. CODE § 542.060.

## ATTORNEY'S FEES

72. In addition, Plaintiff is entitled to all reasonable and necessary attorneys' fees pursuant to the Texas Insurance Code, DTPA, and TEX. CIV. PRAC. & REM. CODE §§ 38.001-.005.

## COMPEL MEDIATION

73. Pursuant to TEX. INS. CODE § 541.161 and TEX. BUS. & COM. CODE § 17.5051, Plaintiff requests that Defendant be made to mediate no later than the 30th day of the signed order, following the 90th day after the date for which this pleading for relief is served upon Defendant.

## JURY DEMAND

74. Plaintiff demands a jury trial, consisting of citizens residing in Bexar County, Texas, and tenders the appropriate fee with this First Amended.

## DISCOVERY

75. Texas Rule of Civil Procedure 47 has been met in this petition. As such, Plaintiff requests that Defendant respond to the Requests for Disclosure, Requests for Production and Interrogatories contained herein:

## I. REQUESTS FOR DISCLOSURE

1. Pursuant to the Texas Rules of Civil Procedure, Plaintiff request that Defendant Peleus Insurance Company, disclose all information and/or material as required by Rule 194.2, paragraphs (a) through (l), and to do so within 50 days of this request.

## II. REQUESTS FOR PRODUCTION

1. Please produce Peleus Insurance Company's complete claim files from the home, regional and local offices, as well as third party adjusters/adjusting firms regarding the subject claim, including copies of the file jackets, "field" files and notes, and drafts of documents contained in the file for the premises relating to or arising out of Plaintiff's underlying claim.

2. Please produce the underwriting files referring or relating in any way to the policy at issue in this action, including the file folders in which the underwriting documents are kept and drafts of all documents in the file.

3. Please produce a certified copy of the insurance policy pertaining to the claim made subject of this lawsuit, including all underwriting files and insurance applications sent on behalf of Plaintiff in its attempt to secure insurance on the Property, which is the subject of this suit.

4.  Please produce the electronic diary, including the electronic and paper notes made by Peleus Insurance Company's claims personnel, contractors, and third party adjusters/adjusting firms relating to the Plaintiff's claim.

5.  Please produce all emails and other forms of communication by and between all parties in this matter relating to the underlying event, claim or the Property, which is the subject of this suit.

6.  Please produce the adjusting reports, estimates and appraisals prepared concerning Plaintiff's underlying claim.

7.  Please produce the field notes, measurements and file maintained by the adjuster(s) and engineers who physically inspected the Property, which is the subject of this suit.

8.  Please produce the emails, instant messages and internal correspondence pertaining to Plaintiff's underlying claim.

9.  Please produce the videotapes, photographs and recordings of Plaintiff or Plaintiff's home, regardless of whether Peleus Insurance Company intends to offer these items into evidence at trial.

10.  Please produce all communications, correspondence, documents and emails between any and all third-party claims administrators and/or agents and the Plaintiff, not limited to physical or audio recordings of all conversations between Plaintiff and any and all third-party claims administrators and/or agents.

11.  Please produce all audio recordings or transcripts of conversations, calls, text, email or any other data sent to and from Plaintiff by any and all third-party claims administrators and/or agents after their letter of representation sent by counsel.

12. Please provide copies of all marketing material sent on behalf of Peleus Insurance Company and/or its agents after the date of loss of the Property, which is the subject of this suit.

13. Please provide all correspondence between Peleus Insurance Company and its third-party claims administrator, and all correspondence between Peleus Insurance Company and its assigned agents, after the date of loss of the Property, which is the subject of this suit.

## III. INTERROGATORIES

1. Please identify any person Peleus Insurance Company expects to call to testify at the time of trial.

2. Please identify the persons involved in the investigation and handling of Plaintiff's claim for insurance benefits arising from damage relating to the underlying event, claim or the Property, which is the subject of this suit, and include a brief description of the involvement of each person identified, their employer, and the date(s) of such involvement.

3. If Peleus Insurance Company or Peleus Insurance Company's representatives performed any investigative steps in addition to what is reflected in the claims file, please generally describe those investigative steps conducted by Peleus Insurance Company or any of Peleus Insurance Company's representatives with respect to the facts surrounding the circumstances of the subject loss. Identify the persons involved in each step.

4. Please identify by date, author, and result the estimates, appraisals, engineering, mold and other reports generated as a result of Peleus Insurance Company's investigation.

5. Please state the following concerning notice of claim and timing of payment:

   a.    The date and manner in which Peleus Insurance Company received notice of the claim;

b.      The date and manner in which Peleus Insurance Company acknowledged receipt of the

claim;

c.      The date and manner in which Peleus Insurance Company commenced investigation of the

claim;

d.      The date and manner in which Peleus Insurance Company requested from the claimant all

items, statements, and forms that Peleus Insurance Company reasonably believed, at the

time, would be required from the claimant pursuant to the investigation; and

e.      The date and manner in which Peleus Insurance Company notified the claimant in writing

of the acceptance or rejection of the claim.

6.   Please identify by date, amount and reason, the insurance proceeds payments made by Defendant, or

on Defendant's behalf, to the Plaintiff.

7.   Has Plaintiff's claim for insurance benefits been rejected or denied? If so, state the reasons for

rejecting/denying the claim.

8.   When was the date Peleus Insurance Company anticipated litigation?

9.   Have any documents (including those maintained electronically) relating to the investigation or

handling of Plaintiff's claim for insurance benefits been destroyed or disposed of? If so, please

identify what, when and why the document was destroyed, and describe Peleus Insurance

Company's document retention policy.

10.  Does Peleus Insurance Company contend that the insured's premises were damaged by storm-

related events and/or any excluded peril?  If so, state the general factual basis for this contention.

11. Does Peleus Insurance Company contend that any act or omission by the Plaintiff voided, nullified, waived or breached the insurance policy in any way? If so, state the general factual basis for this contention.

12. Does Peleus Insurance Company contend that the Plaintiff failed to satisfy any condition precedent or covenant of the Policy in any way?  If so, state the general factual basis for this contention.

13. How is the performance of the adjuster(s) involved in handling Plaintiff's claim evaluated?  State what performance measures are used and describe Peleus Insurance Company's bonus or incentive plan for adjusters.

## **CONCLUSION**

76. Plaintiff prays that judgment be entered against Defendant Peleus Insurance Company and that Plaintiff be awarded all of its actual damages, consequential damages, prejudgment interest, additional statutory damages, post judgment interest, reasonable and necessary attorneys' fees, court costs and for all such other relief, general or specific, in law or in equity, whether pled or un-pled within this First Amended.

## **PRAYER**

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays it be awarded all such relief to which it is due as a result of the acts of Defendant Peleus Insurance Company, and for all such other relief to which Plaintiff may be justly and rightfully entitled. In addition, Plaintiff requests the award of treble damages under the Texas Deceptive Trade Practices Act and Texas Insurance Code, attorneys' fees for the trial and any appeal of this lawsuit, for all costs of Court on their behalf expended, for pre-judgment and post-

judgment interest as allowed by law, and for any other and further relief, either at law or in equity, to which

Plaintiff may show the itself to be justly entitled.

RESPECTFULLY SUBMITTED,

*/s/ J. Zachary Moseley*
McCLENNY MOSELEY & ASSOCIATES, PLLC
James M. McClenny
State Bar No. 24091857
J. Zachary Moseley
State Bar No. 24092863
Kelley A. Seid
State Bar No. 24102480
411 N. Sam Houston Parkway E., Suite 200
Houston, Texas 77060
Principal Office No. 713-334-6121
Facsimile: 713-322-5953
James@mma-pllc.com
Zach@mma-pllc.com
Kelley@mma-pllc.com
ATTORNEYS FOR PLAINTIFF

# EXHIBIT B-4

## CIVIL PROCESS REQUEST

# CIVIL PROCESS REQUEST

> FOR EACH PARTY SERVED YOU MUST FURNISH ONE (1) COPY OF THE PLEADING
> FOR WRITS FURNISH TWO (2) COPIES OF THE PLEADING PER PARTY TO BE SERVED

**CASE NUMBER:** _____    **CURRENT COURT:** _____

**TYPE OF INSTRUMENT TO BE SERVED** (See Reverse For Types): Plaintiff's Original Petition

**FILE DATE OF MOTION:** 12/21/2016

                                             Month/        Day/        Year

**SERVICE TO BE ISSUED ON (Please List Exactly As The Name Appears In The Pleading To Be Served):**

1. NAME: Peleus Insurance Company

   ADDRESS: 901 Main Street, Suite 4000, Dallas, Texas 75202

   AGENT, (*if applicable*): Mr. James Holbrook with Zelle LLP

**TYPE OF SERVICE/PROCESS TO BE ISSUED** (*see reverse for specific type*): Citation

   **SERVICE BY** (*check one*):
   ☐ **ATTORNEY PICK-UP**                    ☐ **CONSTABLE**
   ☐ **CIVIL PROCESS SERVER -** Authorized Person to Pick-up: _____    Phone: _____
   ☐ **MAIL**                                ☒ **CERTIFIED MAIL**
   ☐ **PUBLICATION:**
      Type of Publication:    ☐ **COURTHOUSE DOOR,  or**
                             ☐ **NEWSPAPER OF YOUR CHOICE:** _____
   ☐ **OTHER,** *explain* _____

*******************************************************************************
****

2. NAME: _____

   ADDRESS: _____

   AGENT, (*if applicable*): _____

**TYPE OF SERVICE/PROCESS TO BE ISSUED** (*see reverse for specific type*): _____

   **SERVICE BY** (*check one*):
   ☐ **ATTORNEY PICK-UP**                    ☐ **CONSTABLE**
   ☐ **CIVIL PROCESS SERVER -** Authorized Person to Pick-up: _____    Phone: _____
   ☐ **MAIL**                                ☐ **CERTIFIED MAIL**
   ☐ **PUBLICATION:**
      Type of Publication:    ☐ **COURTHOUSE DOOR,  or**
                             ☐ **NEWSPAPER OF YOUR CHOICE:** _____
   ☐ **OTHER,** *explain* _____

**ATTORNEY (OR ATTORNEY'S AGENT) REQUESTING SERVICE:**

NAME: J. Zachary Moseley            TEXAS BAR NO./ID NO. 24092863

MAILING ADDRESS: 411 N. Sam Houston Parkway E, Suite 200, Houston, Texas 77060

PHONE NUMBER: 713        334-6121        FAX NUMBER: 713        322-5986
              area code   phone number                 area code   fax number

EMAIL ADDRESS: Zach@mma-pllc.com

CIVIC108 Revised 9/3/00

SERVICE REQUESTS WHICH CANNOT BE PROCESSED BY THIS OFFICE WILL BE HELD FOR 30 DAYS PRIOR TO CANCELLATION.  FEES WILL BE REFUNDED ONLY UPON REQUEST, OR AT THE DISPOSITION OF THE CASE.  SERVICE REQUESTS MAY BE REINSTATED UPON APPROPRIATE ACTION BY THE PARTIES.

INSTRUMENTS TO BE SERVED:
(Fill In Instrument Sequence Number, i.e. 1st, 2nd, etc.)

ORIGINAL PETITION
_____    AMENDED PETITION
_____    SUPPLEMENTAL PETITION


COUNTERCLAIM
_____    AMENDED COUNTERCLAIM
_____    SUPPLEMENTAL COUNTERCLAIM

CROSS-ACTION:
_____    AMENDED CROSS-ACTION
_____    SUPPLEMENTAL CROSS-ACTION

THIRD-PARTY PETITION:
_____    AMENDED THIRD-PARTY PETITION
_____    SUPPLEMENTAL THIRD-PARTY PETITION

INTERVENTION:
_____    AMENDED INTERVENTION
_____    SUPPLEMENTAL INTERVENTION

INTERPLEADER
_____    AMENDED INTERPLEADER
_____    SUPPLEMENTAL INTERPLEADER


INJUNCTION

MOTION TO MODIFY

SHOW CAUSE ORDER

TEMPORARY RESTRAINING ORDER


BILL OF DISCOVERY:
    ORDER TO:  _____
                        (specify)

    MOTION TO:  _____
                        (specify)

PROCESS TYPES:

NON WRIT:
CITATION
ALIAS CITATION
PLURIES CITATION
SECRETARY OF STATE CITATION
COMMISSIONER OF INSURANCE
HIGHWAY COMMISSIONER
CITATION BY PUBLICATION
NOTICE
SHORT FORM NOTICE

PRECEPT (SHOW CAUSE)
RULE 106 SERVICE

SUBPOENA

WRITS:
ATTACHMENT (PROPERTY)
ATACHMENT (WITNESS)
ATTACHMENT (PERSON)

CERTIORARI

EXECUTION
EXECUTION AND ORDER OF SALE

GARNISHMENT BEFORE JUDGMENT
GARNISHMENT AFTER JUDGMENT

HABEAS CORPUS
INJUNCTION
TEMPORARY RESTRAINING ORDER

PROTECTIVE ORDER (FAMILY CODE)
PROTECTIVE ORDER (CIVIL CODE)

POSSESSION (PERSON)
POSSESSION (PROPERTY)

SCIRE FACIAS
SEQUESTRATION
SUPERSEDEAS

CIVC108 Revised 9/2/99

# EXHIBIT B-5

## CITATION

CERTIFIED MAIL #70151660000043922974  **Case Number: 2016-CI-21574**

2016CI21574  S00001

**BENT OAK TOWNHOUSES INC**

*Plaintiff*

vs.

**PELEUS INSURANCE COMPANY**

IN THE DISTRICT COURT
225th JUDICIAL DISTRICT
BEXAR COUNTY, TEXAS

*Defendant*

(Note: Attached document may contain additional litigants).

**CITATION**

**"THE STATE OF TEXAS"**

**DIRECTED TO:** PELEUS INSURANCE COMPANY
　　　　　　　BY SERVING MR. JAMES HOLBROOK WITH ZELLE LLP

　　　　　　901 MAIN ST 4000
　　　　　　DALLAS TX 75202

"You have been sued. You may employ an attorney. If you or your attorney do not file a written answer with the clerk who issued this citation by 10:00 a.m. on the Monday next following the expiration of twenty days after you were served this citation and petition, a default judgment may be taken against you." Said petition was filed on the 21st day of December, 2016.

ISSUED UNDER MY HAND AND SEAL OF SAID COURT ON THIS 21ST DAY OF DECEMBER A.D., 2016.

FIRST AMENDED PETITION

J ZACHARY MOSELEY
ATTORNEY FOR PLAINTIFF
411 N SAM HOUSTON PARKWAY E 200
HOUSTON, TX 77060



**Donna Kay McKinney**
**Bexar County District Clerk**
101 W. Nueva, Suite 217
San Antonio, Texas 78205

By: *Maria J Abilez,* Deputy

M/O on   12/21/16

Officer's Return

Came to hand on the 21st day of December 2016, A.D., at 2:38 o'clock P.M. and EXECUTED (NOT EXECUTED) by CERTIFIED MAIL, on the _____ day of _____, A.D., 20___, by delivering to _____ a true copy of this Citation, upon which I endorse the date of delivery, together with the accompanying copy of the FIRST AMENDED PETITION

Cause of failure to execute this Citation is _____.

**Donna Kay McKinney**
Clerk of the District Courts of
Bexar County, Texas

By: *Maria J Abilez,* Deputy

FILE COPY (DK003)

DOCUMENT SCANNED AS FILED

# EXHIBIT B-6

DEFENDANT PELEUS INSURANCE COMPANY'S
ANSWER TO PLAINTIFF'S FIRST AMENDED
PETITION

FILED
12/28/2016 2:03:59 PM
Donna Kay McKinney
Bexar County District Clerk
Accepted By: Larry Botello Jr.

Case 5:16-cv-01310-FB   Document 1-4   Filed 12/29/16   Page 67 of 72

CAUSE NO. 2016-CI-21574

| | | |
|---|---|---|
| BENT OAK TOWNHOUSES, INC., | § | IN THE DISTRICT COURT OF |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | BEXAR COUNTY, TEXAS |
| | § | |
| PELEUS INSURANCE COMPANY, | § | |
| | § | |
| Defendant. | § | 225th JUDICIAL DISTRICT |

**DEFENDANT PELEUS INSURANCE COMPANY'S ANSWER TO
PLAINTIFF'S FIRST AMENDED PETITION**

Defendant Peleus Insurance Company files its Answer to Plaintiff Bent Oak Townhouses, Inc.'s First Amended Petition and states:

**GENERAL DENIAL**

1.      Pursuant to Texas Rule of Civil Procedure 92, Peleus generally denies each and every allegation contained in Plaintiff Bent Oak Townhouses, Inc.'s First Amended Petition and demands strict proof thereof by a preponderance of the evidence. By this general denial, Peleus further demands that Plaintiff prove every fact in support of its claim(s) for exemplary damages by clear and convincing evidence.

**SPECIAL DENIAL**

2.      Peleus specifically denies that Plaintiff has satisfied all conditions precedent to the recovery it seeks in this lawsuit.

3.      For example, among other conditions precedent, Plaintiff failed to provide Peleus timely written notice of Plaintiff's statutory claims in this matter as expressly required by Texas Insurance Code Section 541.154, thereby precluding Plaintiff from prevailing on such claims. Plaintiff also failed to properly present its claim for attorneys' fees under Texas Civil Practice

and Remedies Code Section 38.001, thereby precluding Plaintiff's recovery of any such fees in this action.

4.      Further, to recover under the Policy of insurance under which Plaintiff seeks coverage, Texas statute, and/or Texas law, Plaintiff must promptly provide Peleus all reasonably requested documentation and/or information necessary for Peleus to investigate, evaluate, adjust, and pay such alleged losses and/or damages. Plaintiff failed to satisfy this condition.

5.      Discovery in this matter is ongoing and Peleus reserves the right to assert that Plaintiff has failed to meet other conditions precedent set forth under the Policy, Texas statute, and/or Texas law as this litigation proceeds.

## AFFIRMATIVE DEFENSES

6.      Pursuant to Texas Rule of Civil Procedure 94, Peleus sets forth the following affirmative defenses to the allegations set forth in Plaintiff's First Amended Petition:

a.      Plaintiff's claims are barred, in whole or in part, on the basis that Plaintiff's First Amended Petition fails to state a claim against Peleus upon which relief can be granted.

b.      Plaintiff's claims are barred, in whole or in part, by the Policy's provision prohibiting legal action against Peleus under the Policy unless Plaintiff has fully complied with all of the terms of the Policy.

c.      Plaintiff's claims are barred, in whole or in part, to the extent the physical loss or damage claimed by Plaintiff did not occur during the applicable policy period (as required by the Policy).

d.      Plaintiff's claims are barred, in whole or in part, to the extent the physical loss or damage claimed by Plaintiff was not caused by (or did not result from) a covered cause of loss (as required by the Policy).

e.      Plaintiff's claims are barred, in whole or in part, to the extent the Plaintiff seeks coverage under the Policy for physical loss or damage to property other than "Covered Property" as defined in the Policy.

f.      Plaintiff's claims are barred, in whole or in part, by the Policy's exclusion for "cosmetic loss or damage" as defined in the Policy.

g.      Plaintiff's claims are barred, in whole or in part, by Plaintiff's neglect to use all reasonable means to save and preserve the property from further damage at and after the time of loss.

h.      Plaintiff's claims are barred, in whole or in part, by the Policy's exclusion(s) for wear and tear or depletion.

i.      Plaintiff's claims are barred, in whole or in part, by the Policy's exclusion(s) for rust, corrosion, decay, deterioration, hidden or latent defect, and/or any quality in the property that causes it to damage or destroy itself.

j.      Plaintiff's claims are barred in whole or in part by the Policy's exclusion for faulty, inadequate or defective: design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction; materials used in repair, construction, renovation or remodeling; or maintenance.

k.      Plaintiff's claims are barred, in whole or in part, to the extent Plaintiff failed to take all reasonable steps to mitigate, minimize, or avoid the damages allegedly

sustained and/or to protect the property from further damage. Plaintiff's recovery under the Policy and Texas law, if any, must be offset and reduced accordingly.

l.      Plaintiff's claims are barred, in whole or in part, because Plaintiff's alleged damages were caused, in whole or in part, by the negligent acts and/or omissions of Plaintiff.

m.      Plaintiff's claims are barred, in whole or in part, because Plaintiff's alleged damages were caused, in whole or in part, by the negligent acts and/or omissions of third parties over whom Peleus has and/or had no control.

n.      A bona fide controversy exists concerning the extent of Plaintiff's entitlement to benefits under the Policy. Peleus and/or its employees, agents, representatives, and adjusters are entitled to value claims differently from Plaintiff without facing extra-contractual liability. Peleus would show that a bona fide controversy exists regarding: (a) the existence and/or scope of any covered loss or damage; (b) whether and to what extent any asserted loss or damage was the result of a covered occurrence or occurrences; (c) the reasonable and necessary measures to repair any covered loss or damage; and (d) the reasonable and necessary measures to repair any covered loss or damage.

o.      Plaintiff's claim for exemplary damages is unconstitutional and violates the due process clauses of the Fifth and Fourteenth Amendments to the United States Constitution and of Article 1, Section 19 of the Texas Constitution for the following reasons: (a) the standards under which such claims are submitted are so vague as to be effectively meaningless and threaten a deprivation of property for the benefit of society without the protection of fundamentally fair procedures; (b) the highly penal nature of

exemplary damages threatens the possibility of excessive punishment and almost limitless liability without the benefit of fundamentally fair procedures or any statutory limitations; (c) the introduction of evidence of Peleus's financial worth is so prejudicial as to impose liability and punishment in a manner bearing no relation to the extent of any injury allegedly inflicted or to any benefit from any alleged wrongdoing and, therefore, any verdict would be the result of bias and prejudice in a fundamentally unfair manner.

p.      Plaintiff's claim for exemplary damages constitutes an unconstitutional excessive fine under Article 1, Section 13 of the Texas Constitution because such highly penal sanctions may be imposed for the benefit of society under standards so vague and effectively meaningless as to threaten unlimited punishment bearing no relation to the extent of any injury allegedly inflicted at the unbridled discretion of the jury.

q.      To the extent Plaintiff has asserted claims against Peleus under Texas Insurance Code Chapter 541, those claims are barred by Section 541.153, and this Court should award Peleus court costs and reasonable and necessary attorneys' fees because any such claims under the Texas Insurance Code are groundless and brought in bad faith or for the purpose of harassment.

7.      Peleus further reserves the right to assert additional affirmative defenses as this litigation proceeds.

## **PRAYER**

WHEREFORE, PREMISES CONSIDERED, Defendant Peleus Insurance Company prays that upon final judgment all relief requested by Plaintiff be denied, that all costs be taxed against Plaintiff, and for such other and further relief to which it may be justly entitled, whether at law or in equity.

Respectfully submitted,

ZELLE LLP


By:   _/s/ James W. Holbrook, III_
       Steven J. Badger
       Texas Bar No. 01499050
       sbadger@zelle.com
       James W. Holbrook, III
       Texas Bar No. 24032426
       jholbrook@zelle.com
       Tyler J. McGuire
       tmcguire@zelle.com
       Texas Bar No. 24098080

901 Main Street, Suite 4000
Dallas, Texas 75202-3975
Telephone:  214-742-3000
Facsimile:  214-760-8994

**ATTORNEYS FOR DEFENDANT
PELEUS INSURANCE COMPANY**


## CERTIFICATE OF SERVICE

On December 28, 2016, I served a true and correct copy of Defendant Peleus Insurance Company's Answer to Plaintiff's First Amended Petition upon all known counsel of record pursuant to the Texas Rules of Civil Procedure addressed as follows:

James M. McClenny
james@mma-pllc.com
J. Zachary Moseley
zach@mma-pllc.com
Kelly A. Seid
kelly@mma-pllc.com
MCCLENNY MOSELEY & ASSOCIATES, PLLC
411 N. Sam Houston Pkwy E, Suite 200
Houston, Texas 77060
Telephone:    (713) 334-6121
Facsimile:    (713) 322-5986
*Attorneys for Plaintiff*

                                _/s/ James W. Holbrook, III_
                                James W. Holbrook, III